IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUSAN S.,[1]        )
                    )
    Plaintiff,      )
                    )        CIVIL ACTION
v.                  )
                    )        No. 19-1127-JWL
ANDREW M. SAUL,[2]  )
Commissioner of Social Security,  )
                    )
    Defendant.      )
_____)

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.  Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff filed an application for DIB on June 2, 2015. (R. 12, 215). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in weighing the medical opinions of Dr. Sampat, a state agency medical consultant, and of Dr. Patel, a physician who examined Plaintiff at the request of the agency and provided a report of that examination.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R.

§ 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II. Discussion

Plaintiff argues the ALJ accorded the medical opinions of Dr. Sampat and Dr. Patel significant weight but "both opinions cannot be true," and although "[t]he ALJ resolved the conflict between the RFC and Dr. Sampat's opinion, … [h]e failed to do the same with Dr. Patel's opinion." (Pl. Br. 7). She argues that when an ALJ accords significant weight to a medical opinion but fails to include all its limitations in the RFC assessed, remand is required. Id. at 11 (citing Schmitt v. Colvin, No. 13-1129-SAC, 2014 WL 3519091, at *6-7 (D. Kan. July 16, 2014); Henderson v. Astrue, No. 11-2645-JWL, 2013 WL 141610, at *4 (D. Kan. Jan. 11, 2013); Lodwick v. Astrue, No. 10-1394-SAC,

2011 WL 6253799, at *4 (D. Kan. Dec. 13, 2011)). Finally, Plaintiff reminds the court it is not to reweigh the evidence or substitute its judgment for the Commissioner's. Id. (citing Lax, 489 F.3d at 1084).

The Commissioner argues the ALJ reasonably considered Dr. Sampat's and Dr. Patel's opinions, appropriately weighed them, and properly explained the weight accorded to each in the RFC he assessed. He argues, "the ALJ noted that he was giving substantial weight to Dr. Patel's opinions only 'to the extent that they go' and that Dr. Patel did not render any opinions with regard to Plaintiff's specific function-by-function work capabilities or limitations." (Comm'r Br. 9) (quoting R. 24). He points to the ALJ's finding the record does not contain a treating or non-treating source opinion suggesting greater limitations than those assessed. Id. at 10. He concludes, "There was no true conflict between Dr. Patel's and Dr. Sampat's respective opinions and the ALJ's justifiable RFC finding that fully accounted for Plaintiff's physical limitations as supported by the objective record and by the ALJ's reasonable consideration of Dr. Sampat's and Dr. Patel's conclusions." Id. at 12.

### A. The ALJ's Findings

The ALJ provided a thorough, extensive consideration of Dr. Patel's report:

On September 21, 2015, a consultative physical examination of the claimant was performed by Ravi Patel, D.O. (Ex. B7F). The claimant reported the following subjective information to Dr. Patel regarding her medical history and current symptoms. She reported a history of a learning disability and had problems with English and spelling in school, but she attended college and became a CNA/CMA. She had a history of spondylitis since around 2012, and her current symptoms included pain and decreased mobility. She described constant achy, throbbing pain, as well as sharp pain, in her middle back which radiated down her legs. She said her

5

pain intensity at the time of examination was 1-2/10, but that it typically was 10/10. She said activity made the symptoms worse, and that this problem affected her ability to work secondary to difficulty walking, standing and sitting. She reported a history of arthritis since 2011 which affected her left foot, hands, knees and lower back. She denied seeing a rheumatologist for her arthritis. She reported an x-ray in 2010 showed arthritis but denied any physical therapy or treatments. Her current symptoms included pain, stiffness, decreased mobility, numbness, muscle cramps, muscle spasms, fatigue and weakness. She described constant achy pain in her left foot, hands, knees and lower back with current pain intensity of 3+/10. She stated that rest helps, while weather changes makes [sic] the problems worse. She stated that this problem affected her ability to work secondary to standing, sitting and walking limitations, as well as she was unable to stoop, bend over or get on her knees. She reported a history of bone spurs since 2011. She said an x-ray showed the bone spur but she denied surgery or any treatments for this problem. Her current symptoms included pain, foot swelling and decreased mobility. She described daily sharp pain in her left foot lasting 5 minutes at a time, with pain intensity of 1/10. She stated that staying off her foot helped, while walking and standing made the problem worse. She said this problem affected her ability to work secondary to difficulty walking and standing. She reported a history of diverticulitis which was discovered when a colonoscopy was done on April 6, 2015. Her current symptoms included bloating and diarrhea, and using the restroom made her symptoms better. She stated she was unsure if this problem affected her ability to work, but that she does have to use the restroom a lot. She reported she was diagnosed with high blood pressure in 2012 and had been on and off medication since. She reported the medication does manage her blood pressure well when she is able to stay on it. She reported getting headaches a couple times a week, blurry vision, dizziness and occasional nausea and vomiting when she starts to get panicked. She denied ever being hospitalized for high blood pressure. She stated that this problem affected her ability to work secondary to headaches and dizziness. She reported that her typical daily activities consisted of resting, reading and being on the computer. She reported functional limitations of sitting 120 minutes, standing 60 minutes, walking 2 blocks, and lifting and carrying 5 pounds repetitively and 10 pounds occasionally. She also reported limitations with seeing, traveling and handling.

Upon examination and testing, Dr. Patel noted the following pertinent findings regarding the claimant. Her blood pressure was 133/83. She weighed 279 pounds. She had bilateral 20/20 visual acuity with glasses. Her lungs were clear to auscultation bilaterally with no wheezes, crackles

> or rhonchi. There was no cyanosis, clubbing or edema noted in her extremities. Her mood and concentration were appropriate during the entire exam, and her memory was intact. Her gait and station were steady and symmetric, and she had no decreased stance time with weight bearing. There was no assistive device evident. Her hand-eye coordination was good. She did not have any palpable muscle spasms, and her muscle bulk and tone were within normal limits. Her muscle strength was 5/5 with respect to all muscle groups. Sensory examination was noted to be normal with light touch throughout. Straight leg raise testing was negative. Her reflexes were noted to be +2/4 bilaterally. The joints of her upper extremity including shoulder, elbow, wrist, MCPs, PIPs, DIP, showed no joint swelling, erythema, effusion or deformity. Her hands and fingers appeared normal, and she was able to unbutton her shirt and button it back up. The joints of her lower extremities including the hip, knee, ankle, and MTPs showed no joint swelling, erythema, effusion or deformity. She was able to squat and rise from the seated position with ease. She was unassisted in getting up and down from the exam table. She was able to walk on her heels, but walking on her toes was difficult. Tandem walking was normal. She could not hop on one foot bilaterally. Range of motion testing was normal with the following exceptions: knee flexion extension [sic] was limited at 120 degrees bilaterally; and lumbar spine flexion and extension was limited to 70 degrees bilaterally.
>
> Dr. Patel listed no diagnosis. Dr. Patel noted his opinion that "there are no physical exam findings other than the range of motion limitations with flexion, extension lumbar spine and of the knees that would prevent this claimant from participating in a job that would require her to work for 40 hours a week." Dr. Patel further opined that the claimant "could reasonably be expected to perform any sort of sitting or desk job for the said time interval of 40 hours a week." The undersigned gives significant weight to Dr. Patel's opinions, to the extent that they go, because they are supported by his detailed examination findings and consistent with the overall evidence in the record. Dr. Patel did not render any opinions with regard to the claimant's specific function by function work capabilities or limitations.

(R. 22-24).

The ALJ also evaluated the medical opinion of Dr. Sampat, explaining that he gave

> significant weight to the opinions of the State agency medical consultant, Dr. Sampat, who opined that the claimant is capable of working at the light

7

> level of physical exertion with some postural limitations (Ex. B6A/14-17). These opinions are consistent with the claimant's medical treatment records in evidence and are not contradicted by any other medical opinions in evidence. However, the updated evidence in the record at the time of this decision, including the claimant's testimony, shows that the additional nonexertional manipulative and environmental limitations set forth in the determined residual functional capacity are warranted.

(R. 29).

### B. Analysis

As Plaintiff's Brief suggests, an ALJ is required to evaluate all medical opinions in the case record. 20 C.F.R. § 404.1527. Social Security Ruling (SSR) 96-8p provides that an ALJ must provide a narrative discussion of his RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2019). The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the claimant can perform sustained work activities, and describe the maximum amount of each work activity the claimant can perform. Id. It must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. The narrative discussion must include consideration of medical opinions regarding the claimant's capabilities and if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150. Where an ALJ accepts certain opinions of an acceptable medical source but appears to reject others without providing an explanation, the Tenth Circuit has found that remand is necessary "so that the ALJ can explain the evidentiary support for his RFC determination." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

8

The court finds no error in the ALJ's evaluation of Dr. Patel's and Dr. Sampat's opinions. As the Commissioner's Brief suggests, the ALJ accorded significant weight to both opinions but he did not, and he could not, accord controlling weight to either opinion. The ALJ quoted Dr. Patel's opinion that "there are no physical exam findings other than the range of motion limitations with flexion, extension lumbar spine and of the knees that would prevent this claimant from participating in a job that would require her to work for 40 hours a week." (R. 24). He qualified the weight given to Dr. Patel's opinions, only according significant weight "to the extent that they go," and noting that Dr. Patel's opinions did not include "specific function by function work capabilities or limitations." (R. 24). Moreover, Dr. Sampat considered and summarized Dr. Patel's opinions when he reviewed the medical evidence and opined that Plaintiff was capable of a range of light work. (R. 117-21). And the ALJ accorded significant weight without further qualification to Dr. Sampat's opinion and additionally explained that "the updated evidence in the record at the time of this decision" warranted manipulative and environmental limitations not suggested by Dr. Sampat. Id. at 29.

While it, perhaps, may have been better for the ALJ to have specified that he did not accept Dr. Patel's oblique suggestion that Plaintiff be given a "sitting or desk job," it was not required in the circumstances of this case where he explained his qualified acceptance of the opinion. "Where, as here, [the court] can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting [its] review, [the court] should, indeed must, exercise common sense. The

9

more comprehensive the ALJ's explanation, the easier [the court's] task; but [it] cannot insist on technical perfection." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 3, 2020, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**